PER CURIAM.
The appellant, William Leonard Radney, was found guilty in a bench trial of failure to register as a sex offender, a violation of § 13A-11-200, Ala.Code 1975; failure to register as a convicted felon,[1] a violation of § 13A-11-8, Ala.Code 1975; and possession of drug paraphernalia, a violation of § 13A-12-260, Ala.Code 1975. -He was sentenced to five years’ imprisonment for failing to register as a sex offender, to 30 days’ imprisonment for failing to register as a convicted felon, and to 30 days’ imprisonment for possession of drug paraphernalia. All three sentences were sus *192 pended, and the appellant was placed on probation for five years.
I.
Radney contends that the trial court erred in convicting him of possession of drug paraphernalia because, he says, the State failed to prove that he was in constructive possession of the paraphernalia. (Issue II in Radney’s brief.)
The record reflects that Radney chose to have a bench trial, rather than a jury trial, and that he informed the court that the parties could stipulate as to the facts and allow the court to rule as to whether he would be entitled to a motion for a judgment of acquittal on the cases. The following then transpired regarding the stipulated facts on the possession case:
“[Prosecutor]: The State thinks the facts are as follows: that on 4-21 of 1999, at 3:05 p.m., that was a Wednesday, at 200 Country Club Park, Mountain Brook, Alabama, 35216, which is in the Birmingham Division of Jefferson County, that police officers M.L. Glass and R.K. Osborn of the Mountain Brook Police Department were called to a business called Bugs Boys at the location to talk with two suspects of a theft that occurred from a nearby store. And upon talking with the defendant in this case, William Leonard Radney, determined that he was an ex-felon. He had three felony convictions prior to the time they talked with him, and he was not in possession of his ex-felon card at the time. He was arrested at that time, his car was inventoried, and drug paraphernalia was found in a leopard skin bag under the passenger’s seat.[2] The paraphernalia was a crack pipe that the officers recognized as such at the time....
“[Defense counsel]: And we would add, Your Honor, that when he was arrested, that there was a female passenger in the car, which has already been stated by the prosecutor, and that she was in the passenger’s seat, and that under the passenger’s seat was that zebra-decorated bag,[3]which had lipstick and other female items in that, and that Radney, if he testified in this case, would testify that it was her bag and that he had no knowledge of the crack pipe contained in that bag.
“[Prosecutor]: The bag was in his car. And we would not dispute anything that the defense just stated.
“THE COURT: You won’t dispute that he had no knowledge of it?
“[Prosecutor]: Well, it was in his car. I don’t know if he had knowledge of it, or not. We would have to get the officers in here to testify about that.
“THE COURT: So y’all won’t stipulate on that one?
“[Prosecutor]: Not on that part.
“[Defense counsel]: We will stipulate that he would testify he had no knowledge of it.
“[Prosecutor]: Okay.
“[Defense counsel]: If he testified today.
“[Prosecutor]: We’ll stipulate to that. We are not going to stop this proceeding just for that.
“THE COURT: Okay.
*193 “[Defense counsel]: That’s basically the stipulations.
“[Prosecutor]: That’s the facts.”
(R. 6-9.) Radney then moved for a judgment of acquittal as follows:
“[Defense counsel]; With respect to the possession of drug paraphernalia, the facts have been stipulated that the paraphernalia and crack pipe was found in a lady’s bag, belonging to a lady that was in the ear, and that my client — he said he had no knowledge of it. I don’t know how the Court can impute any knowledge to him, under those circumstances, when it’s in a container, owned and possessed and controlled by another person.... [Wjhere there is no showing that he would ever have an opportunity to go into a lady’s purse or bag to look and see what was in there; that he had no control over it. And merely because it was in his car, for the Court to impute knowledge that he knew that drug paraphernalia was in there, or that he even constructively possessed it, there [are] no facts showing that. There [are] no facts that would impute any knowledge to him.
[[Image here]]
“... And I won’t argue this anymore after this, but there was a stipulation that he would testify that it wasn’t his bag, and that it was a woman’s bag, and he didn’t have any knowledge of what was in there. There has been no stipulation to any testimony that would rebut that. It just — as a practical argument, Your Honor, if you allow somebody to get in your car, then you are going to have to shake them down and open their purse and look and see what is in it. And that’s not practical, and I don’t think the law intended for it to work in that way, to make those kind of requirements on a person. And it’s an impossible requirement to oblige with. I think the Court should dismiss this case. There is non-sufficient [sic] evidence.”
(R. 23-27.)
Section 13A-12-260(c), Ala.Code 1975, provides, in pertinent part:
“It shall be unlawful for any person to use, or to possess with intent to use, or to use to inject, ingest, inhale or otherwise introduce into the human body, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain or conceal a controlled substance in violation of the controlled substances laws of this state.”
In Goodloe v. State, 783 So.2d 931 (Ala.Crim.App.2000), this Court stated the following regarding possession:
“ ‘ “In order to sustain a conviction for possession of controlled substances, there must be sufficient evidence of either actual or constructive possession. Radke v. State, 52 Ala.App. 397, 293 So.2d 312 (1973), affirmed, 292 Ala. 290, 293 So.2d 314 (1974). ‘Just as the mere presence of a person at the time and place of a crime is not sufficient to justify a conviction for the commission of that crime, ... so the mere presence of the accused in a place where the controlled substance is found is not in and of itself evidence of possession.’ German v. State, 429 So.2d 1138, 1140 (Ala.Cr.App.1982).”
“ ‘Menefee v. State, 592 So.2d 642, 644 (Ala.Cr.App.1991).
[[Image here]]
“ ‘ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances. Campbell v. State, [439 So.2d 718 (Ala. *194 Cr.App.), rev’d on other grounds, 439 So.2d 723 (Ala.1983) ]; Yarbrough v. State, 405 So.2d 725 (Ala.Cr.App.1981), cert. denied, 405 So.2d 725 (Ala.1981). This knowledge may be inferred from the accused’s exclusive possession, ownership, and control of the premises. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978). When the accused is not in exclusive possession of the premises, however, this knowledge may not be inferred unless there are other circumstances tending to buttress this inference. Korreckt v. State, 507 So.2d 558 (Ala.Cr.App.1986); Temple v. State, [366 So.2d at 743]. While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Grubbs v. State, 462 So.2d 995 (Ala.Cr.App.1984); Temple v. State.”
“ ‘Robinette v. State, 531 So.2d 682, 686 (Ala.Cr.App.1987), rev’d on other grounds, 531 So.2d 697 (Ala.1988).
[[Image here]]
“ In Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978), this court provided a nonexclusive list of circumstances that may establish a connection between a defendant and the contraband found on the defendant’s property when the defendant is not in exclusive possession of the premises.
“ ‘ “While the kinds of circumstances which may provide a connection between a defendant and the contraband are unlimited and will naturally depend on the facts of each particular case, 56 A.L.R.3d 948 (1974), it has generally been stated that:
“ ‘ “ ‘The kinds of circumstances which provide such connection are (1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that an illicit drug will be found; (5) evidence that debris of the contraband was found on the defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.
“ ‘ “ ‘The kinds of evidence which might be relevant, but which by themselves do not add the necessary connection are: (1) admissions of previous use; (2) conduct that might be construed as evidencing a consciousness of guilt which was not displayed upon the defendant’s confrontation of the possibility that an illicit drug would be discovered; (3) evidence of previous use; (4) evidence that showed the defendant’s physical proximity to the contraband.’
“ ‘ “9 Land and Water L.Rev. 236, 248-49 (1974).”
“ ‘366 So.2d at 743.’
“Posey v. State, 736 So.2d 656, 658-59 (Ala.Crim.App.1997).”
783 So.2d at 933-34. Moreover, “ ‘a defendant’s mere presence in an automobile in which an illegal substance is found will not support his conviction for possession of that substance unless the state introduces *195 other evidence in support of the defendant’s possession.’ ” Palmer v. State, 593 So.2d 143, 145 (Ala.Crim.App.1991), quoting Perry v. State, 534 So.2d 1126, 1128 (Ala.Crim.App.1988).
On appeal, the State argues that a prima facie case of constructive possession was proven because, it says, Radney was in exclusive possession of the vehicle in which the paraphernalia was found. However, contrary to the State’s contention, Radney was not in exclusive possession of the vehicle. The stipulated facts show that Radney was not alone in the car; there was also a female passenger. The stipulated facts also show that the drug paraphernalia was not in plain view, but was found in a leopard-print bag under the seat in which the female passenger was riding. That bag contained lipstick and was frequently referred to as a “purse” throughout the record. Because the facts were stipulated to, the female passenger did not testify as to who owned the bag. The only evidence before the trial court concerning the ownership of the bag came from the stipulation, to which the prosecutor agreed, that Radney would have testified that the bag was owned by the female passenger and that he did not know there was drug paraphernalia in it. There was simply no evidence, other than Radney’s ownership of and presence in the vehicle, showing that Radney had knowledge of the drug paraphernalia in the leopard-print bag. No other circumstances tended to connect Radney to the drug paraphernalia. Radney’s ownership of and presence in the vehicle was not sufficient, alone, to establish his knowledge of the paraphernalia. See, e.g., Posey v. State, 736 So.2d 656, 660 (Ala.Crim.App.1997) (holding that the appellant’s ownership of and presence on the premises where the controlled substance was found was not sufficient to establish the appellant’s knowledge of the presence of the controlled substance where the appellant was not in exclusive possession of the premises at the time the substance was found). Therefore, the trial court erred in denying Radney’s motion for a judgment of acquittal on the possession charge. That conviction must be reversed.
II.
Radney also contends that the trial court erred in convicting him for failure to register as a sex offender under § 13A-11-200, Ala.Code 1975, because, he says, that statute applies only to convictions in state or municipal courts in Alabama or in courts in other states with similar jurisdiction. (Issue I in Radney’s brief.) Because he was convicted in federal court, not a state or municipal court, Radney maintains, he was not required to register as a sex offender under § 13A-11-200.[4]
The parties stipulated that Radney had been convicted in 1979 in the United States District Court for the Northern District of Alabama of violating 18 U.S.C. 2423, the White Slave Traffic Act; the *196 judgment stated that, “aided and abetted by another, [Radney] did transport and cause the movement in interstate commerce [of] a minor, with the intent that the minor engage in prostitution.” (C. 86.) Radney was released from prison in 1985, and the parties stipulated that he did not register as a sex offender under § 13A-11-200.
Section 13A-11-200 provides, in part:
“If any person ... residing in Alabama, has heretofore been convicted, or shall be convicted in any state or municipal court in Alabama or so convicted in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama for any of the offenses hereinafter enumerated, such person shall, upon his or her release from legal custody, register with the sheriff of the county of his or her legal residence within 30 days following such release or within 30 days after September 7, 1967, in case such person was released prior to such date.”
(Emphasis added.)
It is well settled that words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language is not ambiguous, then there is no room for judicial construction. See Ex parte Cobb, 703 So.2d 871 (Ala.1996).
Section 13A-11-200 is not ambiguous; its language is plain, and we are required to interpret it to mean exactly what it says. Section 13A-11-200 requires convicted sex offenders to register only if they were convicted “in any state or municipal court in Alabama” or “in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama.” “State courts” is defined in Black’s Law Dictionary 1407 (6th ed.1990) as follows: “Those courts which constitute the state judicial system in contrast to federal courts. City or county courts may or may not be part of the state system of courts, depending upon the jurisdiction.” (Emphasis added.) The word “similar,” which appears in the phrase “in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama,” is defined in Merriam Webster’s Collegiate Dictionary (10th ed.1997), as “having characteristics in common: strictly comparable ... alike in substance or essentials ... similar implies the possibility of being mistaken for each other.” “Similar” is defined in Black’s Law Dictionary, supra, as follows:
“Nearly corresponding; resembling in many respects; somewhat like; having a general likeness, although allowing for some degree of difference.... Word ‘similar’ is generally interpreted to mean that one thing has a resemblance in many respects, nearly corresponds, is somewhat like, or has a general likeness to some other thing but is not identical in form and substance, although in some cases ‘similar’ may mean identical or exactly alike. It is a word with different meanings depending on [the] context in which it is used.”
Id. at 1383.
Nothing in the plain language of the statute suggests that the Legislature intended to impose a registration requirement on a federally convicted sex offender. The phrases “in any state or municipal court in Alabama” and “in another state in any court having jurisdiction similar to the jurisdiction of state and municipal courts in Alabama” are clear on their face and do not include convictions in federal court. Radney was convicted in a federal district court in Alabama; he was not convicted in a “state or municipal court in Alabama” and he was not convicted “in another state in any court having jurisdiction similar to the jurisdiction of state and municipal *197 courts in Alabama.” Therefore, Radney was not required to register as a sex offender under § 13A-11-200; his conviction for violating § 13A-11-200 must be reversed.[5]
Based on the foregoing, Radney’s conviction for failing to register as a convicted felon is affirmed. However, his convictions for possession of drug paraphernalia and for failure to register as a sex offender are reversed and judgments rendered in Radney’s favor.
AFFIRMED IN PART; REVERSED IN PART; AND JUDGMENT RENDERED IN PART.
McMILLAN, P.J., and COBB, BASCHAB, and SHAW, JJ., concur. WISE, J., concurs in part and dissents in part, with opinion.

. Although the appellant listed the case number (CC-99-5656) for his conviction for failing to register as a convicted felon on his notice of appeal, he does not present any arguments regarding that conviction in his brief to this Court. Therefore, any claims regarding this conviction are deemed to be abandoned. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995)("We will not review issues not listed and argued in brief.”).

. The impound report, which is contained in the record but which was not admitted into evidence, states that the following items were found in a leopard-print bag: two crack pipes, two lighters, wire mesh and a metal rod, a green lipstick, fingernail clippers and 14 cents.

. The "zebra-decorated bag” to which defense counsel refers is apparently the bag referred to elsewhere as the "leopard-skin bag.”

. We note that although the registration and limited notification requirements of § 13A-11-200 have been largely subsumed by the recent, and far more comprehensive, registration, notification, and residency requirements set out in the Community Notification Act, § 15-20-20, et seq., Ala.Code 1975, § 13A-11-200 nonetheless retains a field of operation. By enacting the Community Notification Act, the Legislature clearly intended to broaden the scope of its registration and notification requirements with respect to convicted sex offenders who were incarcerated on the effective date of the Act. See, e.g., §15-20-21 (4)(Z); see also State v. C.M., 746 So.2d 410 (Ala.Crim.App.1999). It is equally clear, however, that the Legislature was acutely aware of the continued field of operation of § 13A-11-200, because the Legislature specifically referenced that section in § 15-20-33(d), which provides: "Nothing in this article shall preclude any criminal sex offender from registering in accordance with Section 13A-11-200; however, such registration unless otherwise proscribed by this article does not trigger public notification.”

. We find support for this conclusion in Act No. 506, Ala. Acts 1967, codified as § 15-20-1, et seq., Ala.Code 1975, the companion act to Act No. 507 (codified as § 13A-11-200), which was enacted at the same time in 1967. The notification requirements of § 15-20-1, read in conjunction with its accompanying sections, were specifically limited to sex offenders convicted under Alabama state law. Section 15-20-1 stated, in part:
"This chapter shall apply to persons who have been arrested and convicted for any act of, or attempt to commit an act of, sexual perversion involving a member of the same or the opposite sex, sexual perversion being defined as an act or acts constituting a violation of one or more of the following criminal laws of the State of Alabama. ...”
Section 15-20-2 provided that "[ejvery law enforcement officer, state, county or municipal, making an arrest for any of the offenses enumerated in Section 15-20-1, or of any violation of a municipal ordinance proscribing a like offense, shall, within 24 hours after making such arrest, report such arrest to the State Department of Public Safety....” Section 15-20-3 provided that "[ejvery court having jurisdiction of any of the offenses enumerated in Section 15-20-1, or of violations of any municipal ordinances proscribing like offenses, shall cause to be forwarded to the Director of Public Safety a record of the conviction in such court of any person of any of the offenses.”